Samuel R. Randall (No. 024517)
**RANDALL LAW PLLC**
4742 North 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone: 602.328.0262
Facsimile: 602.926.1479
Email: srandall@randallslaw.com

Michael A. Josephson (*pro hac vice forthcoming*)
Andrew W. Dunlap (*pro hac vice forthcoming*)
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: 713.352.1100
Facsimile: 713.352.3300
Emails: mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch (*pro hac vice forthcoming*)
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone: 713.877.8788
Email: rburch@brucknerburch.com

**ATTORNEYS FOR LAZARO AND THE HOURLY EMPLOYEES**

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA
# PHOENIX DIVISION

| | |
|---|---|
| Edith Lazaro, Individually and for Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Community Bridges, Inc., an Arizona nonprofit corporation,<br><br>Defendant. | **Case No. ________________**<br><br>**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES**<br><br>**(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*);** |

**(2) Failure to Timely Pay Earned Wages (Arizona Wage Act, A.R.S. § 23-350, *et seq.*).**

**(Jury Trial Demanded)**

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Edith Lazaro (Lazaro) brings this class and collective action to recover unpaid wages and other damages from Community Bridges, Inc. (Community).

2. Community employed Lazaro as one of its Hourly Employees (defined below).

3. Lazaro and the other Hourly Employees regularly work more than 40 hours a workweek.

4. Community pays them by the hour.

5. But Community does not pay Lazaro and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

6. Instead, Community pays Lazaro and the other Hourly Employees non-discretionary bonuses that it excludes from their regular rates of pay for overtime purposes (Community's "bonus pay scheme").

7. Community's bonus pay scheme violates the Fair Labor Standards Act (FLSA) by failing to compensate Lazaro and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

8. And Community thus fails to timely pay all earned wages due on designated paydays and upon termination of employment, in violation of the Arizona Wage Act (AWA).

### JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

11. This Court has general personal jurisdiction over Community because it maintains its principal place of business in Arizona and is an Arizona nonprofit corporation.

12. Venue is proper because Community maintains its principal place of business in Mesa, Arizona, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13. Community employed Lazaro as a Registered Nurse (RN) in its Yuma, Arizona facility from approximately August 2023 until April 2025.

14. Throughout her employment, Community paid Lazaro under its bonus pay scheme.

15. Lazaro's written consent is attached as **Exhibit 1**.

16. Lazaro brings this class and collective action on behalf of herself, and other similarly situated Community employees paid under its bonus pay scheme.

17. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Community employees who were paid a bonus not included in their regular rate of pay during the last three years through final resolution of this action (the "FLSA Collective Members").**

18. The putative AWA class of similarly situated employees is defined as:

> **All hourly Community employees who worked in Arizona and were paid a bonus not included in their regular rate of pay during the last one year through final resolution of this action (the "Arizona Class Members").**

19. The FLSA Collective Members and the Arizona Class Members are collectively referred to as the "Hourly Employees."

20. Community is an Arizona nonprofit corporation headquartered in Mesa, Arizona.

21. Community may be served with process through its registered agent: Benjamin C. Runkle, 1855 W. Baseline Rd., Ste. 101, Mesa, Arizona 85202, or wherever he may be found.

## FLSA COVERAGE

22. At all relevant times, Community was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

23. At all relevant times, Community was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

24. At all relevant times, Community was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

25. At all relevant times, Community had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

26. At all relevant times, Lazaro and the other Hourly Employees were Community's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

27. At all relevant times, Lazaro and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

28. Community is a behavioral healthcare provider that "provides a full continuum of care with locations across Arizona and expanding through the greater United States."[1]

29. To meet its business objectives, Community employs workers, including Lazaro and the other Hourly Employees, to provide care to its patients.

[1] https://communitybridgesinc.org/contact/ (last visited August 8, 2025).

30. For example, Community employed Lazaro as an RN in its Yuma, Arizona facility from approximately August 2023 until April 2025.

31. Lazaro's primary job duties included conducting intakes for patients suffering from mental health crises, providing patient care in the mental health crisis unit, administering medications, and completing required paperwork.

32. Throughout her employment, Lazaro regularly worked more than 40 hours a workweek.

33. Indeed, Lazaro typically worked approximately 12+ hours a day and 3 to 5 days a week "on the clock" (36 to 60+ hours a workweek).

34. Likewise, the other Hourly Employees typically work approximately 12+ hour shifts and 3 to 5 days a week "on the clock" (36 to 60+ hours a workweek).

35. Lazaro and the other Hourly Employees are required to report their "on the clock" hours worked via Community's designated timekeeping system.

36. Community agreed to pay Lazaro approximately $51.13 an hour.

37. Community similarly agreed to pay the other Hourly Employees a similar hourly rate.

38. But Community does not pay Lazaro and the other Hourly Employees at the required premium overtime rate for all hours worked in excess of 40 in a workweek.

39. Instead, Community pays Lazaro and the other Hourly Employees under its bonus pay scheme.

40. Specifically, Community agrees to pay and subsequently pays Lazaro and the other Hourly Employees non-discretionary bonuses, including sign-on bonuses and spot bonuses, it excludes from their regular rates of pay for overtime purposes.

41. For example, Community agreed to pay, and subsequently paid Lazaro, a $15,000 sign-on bonus:

> 1. CBI, acting through the Human Resources Department, agrees to conditionally offer to the Employee the amount of **$15,000.00** as a Sign-on Bonus ("Sign-on Bonus") in return for the Employee accepting CBI's offer of employment and remaining satisfactorily employed in the Hiring Department for at least one full year. This amount shall be paid in the amount of **$3,750.00** after 90 days of successful employment and **$11,250.00** after 12 months of successful employment.

42. But Community failed to include Lazaro's sign-on bonus in her regular rate of pay for overtime purposes, as demonstrated by her paystub for the pay period ending January 13, 2024:

| | Current 12/31/2023 - 1/13/2024 | | | YTD As of 1/13/2024 | |
|---|---|---|---|---|---|
| | Hours/Units | Rate | Amount | Hours/Units | Amount |
| **Earnings** | **112.0000** | | **$5,950.55** | **211.7666** | **$15,641.11** |
| Night | 5.1167 | 53.8670 | $275.62 | 7.2833 | $392.33 |
| Regular | 60.2000 | 48.9700 | $2,947.99 | 122.5833 | $6,002.90 |
| Holiday | 8.0000 | 48.9700 | $391.76 | 8.0000 | $391.76 |
| Night OT | 1.2500 | 80.8005 | $101.00 | 1.2500 | $101.00 |
| Overtime 1.5 | 11.8000 | 73.4550 | $866.77 | 21.4166 | $1,573.16 |
| Signing Bonus | | | | | $3,750.00 |
| Spot Bonus | | | | | $250.00 |
| Paid Time Off | 12.0000 | 48.9700 | $587.64 | 12.0000 | $587.64 |
| RN WEEKEND NIGHT | 1.6333 | 63.6610 | $103.98 | 2.5667 | $163.40 |
| RN WEEKEND DAY OT | | | | 12.0000 | $1,013.68 |
| RN WEEKEND NIGHT OT | | | | 0.6667 | $63.66 |
| RN WEEKEND DAY | 12.0000 | 56.3155 | $675.79 | 24.0000 | $1,351.58 |

43. Community paid the final, $11,250 installment of Lazaro's signing bonus in November 2024:

| | Current 11/3/2024 - 11/16/2024 | | |
|---|---|---|---|
| | Hours/Units | Rate | Amount |
| **Earnings** | | | **$11,250.00** |
| Night | | | |
| Regular | | | |
| Holiday | | | |
| Night OT | | | |
| Overtime 1.5 | | | |
| Signing Bonus | | | $11,250.00 |
| Spot Bonus | | | |
| Paid Time Off | | | |
| RN WEEKEND NIGHT | | | |
| RN WEEKEND DAY OT | | | |
| RN WEEKEND NIGHT OT | | | |
| RN WEEKEND DAY | | | |

44. Thus, under its bonus pay scheme, Community does not pay Lazaro and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek, in violation of the FLSA and AWA.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

45. Lazaro brings her claims as a class and collective action on behalf of herself and the other Hourly Employees.

46. Like Lazaro, the other Hourly Employees are victimized by Community's bonus pay scheme.

47. Other Hourly Employees worked with Lazaro and indicated they were paid in the same or similar manner under Community's bonus pay scheme.

48. Based on her experience with Community, Lazaro is aware Community imposed its bonus pay scheme on other Hourly Employees.

49. The Hourly Employees are similarly situated in the most relevant respects.

50. Even if their job duties and locations vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

51. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

52. Rather, Community's bonus pay scheme renders Lazaro and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 a workweek.

53. Community's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

54. Community's records also show it paid Lazaro and the other Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay for overtime purposes.

55. The back wages owed to Lazaro and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

56. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Community's records, and there is no detraction from the common nucleus of liability facts.

57. Therefore, the issue of damages does not preclude class or collective treatment.

58. Lazaro's experiences are therefore typical of the experiences of the other Hourly Employees.

59. Lazaro has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

60. Lazaro has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Arizona law.

61. Lazaro and her counsel will fairly and adequately protect the interests of the Hourly Employees.

62. Lazaro retained counsel with significant experience in handling complex class and collective action litigation.

63. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Community will reap the unjust benefits of violating the FLSA and AWA.

64. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

65. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Community.

66. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

67. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

68. Among the common questions of law and fact are:

a. Whether Community paid the Hourly Employees non-discretionary bonuses;

b. Whether Community failed to include non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

c. Whether Community failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

d. Whether Community failed to timely pay all wages due to the hourly employees;

e. Whether Community's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

f. Whether Community's violations were willful.

69. As part of its regular business practices, Community intentionally, willfully, and repeatedly violated the FLSA with respect to Lazaro and the other Hourly Employees.

70. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

71. The Hourly Employees are known to Community, are readily identifiable, and can be located through Community's business and personnel records.

## Community's Violations Were Willful

72. Community knew it employed Lazaro and the other Hourly Employees.

73. Community knew it was subject to the FLSA's overtime provisions.

74. Community knew the FLSA required it to pay non-exempt employees, including Lazaro and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

75. Community knew Lazaro and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Community's timekeeping system.

76. Community knew Lazaro and the other Hourly Employees were non-exempt employees entitled to overtime pay.

77. Community knew it paid Lazaro and the other Hourly Employees non-discretionary bonuses.

78. Community knew it was required to include these non-discretionary bonuses in their regular rates of pay.

79. Community knew these non-discretionary bonuses were not included in Lazaro's and the other Hourly Employees' regular rates of pay for overtime purposes.

80. And Community knew the FLSA required it to pay Lazaro and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

81. Community's failure to pay Lazaro and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

82. Community knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme that deprived Lazaro and the other Hourly

Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

83. Lazaro brings her FLSA claim as a collective action on behalf of herself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

84. Community violated, and is violating, the FLSA by employing non-exempt employees such as Lazaro and the other Hourly Employees in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

85. Community's unlawful conduct harmed Lazaro and the other Hourly Employees by depriving them of overtime wages they are owed.

86. Accordingly, Community owes Lazaro and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

87. Because Community knew or showed reckless disregard for whether this bonus pay scheme violated the FLSA, Community owes Lazaro and the other Hourly Employees these wages for at least the past 3 years.

88. Community is also liable to Lazaro and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

89. Finally, Lazaro and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
## FAILURE TO PAY EARNED WAGES UNDER THE AWA
## (ARIZONA CLASS)

90. Lazaro brings her AWA claim on behalf of herself and the other Arizona Class

Members pursuant to FED. R. CIV. P. 23.

91. The conduct alleged violates the AWA. A.R.S. §§ 23-350, *et seq*.

92. At all relevant times, Community was Lazaro's and the other Arizona Class Members' "employer" within the meaning of the AWA. *See* A.R.S. § 23-350(3).

93. At all relevant times, Community employed Lazaro and the other Arizona Class Members as its covered "employees" within the meaning of the AWA. *See* § 23-350(2).

94. Lazaro's and the other Arizona Class Members' outstanding earned overtime wages are "wages" within the meaning of the AWA. *See* § 23-350(7).

95. The AWA requires employers, like Community, to timely pay employees, including Lazaro and the other Arizona Class Members, "all wages due … up to that date" on their regular established paydays. A.R.S. § 23-351(C).

96. The AWA further requires employers, like Community, to timely pay employees, including Lazaro and the other Arizona Class Members, all earned overtime wages no later than sixteen days after the end of the most recent pay period. A.R.S. § 23-351(C)(3).

97. The AWA prohibits employers, like Community, from withholding or diverting any portion of an employee's earned wages. A.R.S. § 23-352.

98. Community violated, and is violating, the AWA by failing to timely pay and instead willfully withholding earned overtime wages from Lazaro and the other Arizona Class Members. *See* A.R.S. §§ 23-351(C)(3) and 23-352.

99. Community's unlawful conduct harmed Lazaro and the other Arizona Class Members by depriving them of timely payment of the full overtime wages they are owed.

100. Accordingly, Community owes Lazaro and the other Arizona Class Members the difference between the rate actually paid and the required overtime rate, which to date, remains outstanding.

101. Community is liable to Lazaro and the other Arizona Class Members for treble damages. *See* A.R.S. § 23-355.

102. Finally, Lazaro and the other Arizona Class Members are entitled to recover all

reasonable attorneys' fees, costs, and expenses incurred in this action.

## JURY DEMAND

103. Lazaro demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Lazaro, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order designating the Arizona Class as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Lazaro and her counsel to represent the interests of the Arizona Class;

d. An Order finding Community liable to Lazaro and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Community liable to Lazaro and the Arizona Class Members for unpaid earned wages owed under the AWA, plus treble damages;

f. A Judgment against Community awarding the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the FLSA and/or AWA;

g. An Order awarding attorney's fees, costs, and expenses to the Hourly Employees;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: August 27, 2025

Respectfully submitted,

**RANDALL LAW PLLC**

By: */s/ Samuel R. Randall*
Samuel R. Randall (No. 024517)
4742 North 24th Street, Suite 300
Phoenix, Arizona 85016
602-328-0262 – Telephone
602-926-1479 – Facsimile
srandall@randallslaw.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR LAZARO & THE HOURLY EMPLOYEES**